Good morning all. We'll be hearing two cases today, and in addition to counsel, we welcome to the classroom the Philadelphia Classical School. We will start with Slatowski v. Sig Sauer, number 24-1639, and we will begin with you, Mr. Zimmerman. Good morning, Your Honors. May it please the Court. Robert Zimmerman on behalf of Plaintiff Appellant Keith Slatowski. I would like to reserve three minutes for rebuttal.  A gun is not supposed to discharge when it is secured in its holster and when the user doesn't touch the trigger, and that is what happened here. Keith Slatowski, a U.S. ICE officer, suffered injuries when his holstered P320 fired when his hand touched the back grip of the gun. His hand and his finger never touched the trigger. Now, if Officer Slatowski's finger did not touch the trigger, then the parties agree that only a foreign object could have caused the trigger to actuate and fire the gun. And a trigger safety that is used by every other manufacturer who makes this type of gun would have prevented the incident. And Appellee's brief accurately framed the issue. The issue is the causation question the jury would have to determine is whether the presence of a tap trigger on the pistol, more likely than not, would have prevented Slatowski's unintended discharge. That's in Appellee's letter brief, page two. All right, so there are two ways of understanding this. One is, should the district court have granted a summary judgment and prevented it from going to trial? The other one is, did the district court abuse its discretion in excluding expert testimony on causation? So let's talk about how we know whether the absence of the safety and that design caused this. So we've got the plaintiff's testimony, but we also have some question. There's a so-called stovepipe malfunction going on with this. And how do we interpret that? Now, how's a jury going to know what a stovepipe malfunction is or how to understand it without any additional assistance from an expert? So the district court did rule that the experts could talk about design defect. And in talking about design defect, those experts can talk about the functions of a gun. The experts can talk about what stove piping is. The experts can talk about whether that port would clear in a normal situation. That doesn't go to the causation specifically in this case. So when you're talking about the issues related to circumstantial evidence, which would prove that the gun fired within the holster in a way where the face of the trigger would not have been exposed, those are things that, through the design opinions, can be discussed. And laypersons can understand, number one, whether a lock on a trigger prevents the trigger from moving backwards, just like a lock on a door. And number two, whether a port, if it is open and exposed, can cause the shell casing to expend, or if it is blocked, that it will not do so. But you're also arguing that the district court erred by excluding the expert testimony. Yes, ma'am. By that exclusion, if they can speak through the subject of design defect to what effect the tagged trigger would have had in the event that the plaintiff's testimony is believed, what do you actually lose by having them testify, not under the umbrella of causation, but under the title of design defect? What difference does that really make to your client? I think the only issue, if the experts are excluded and the jury can determine the issue of causation, the only thing that we would lose would be the expert's ability to interpret the facts of this case and determine on these facts whether the tagged trigger would have prevented this incident. They've done testing on P320s. This gun, for some period of time, was put back into circulation. But they have tested P320s, this exact model, and determined that the surface area of a trigger versus the surface area of a tab is significant. So they can talk about those items. I think what we would lose if the court were to affirm the exclusion of the experts but allow the jury to consider the issue of causation would just be the expert's analysis of these particular facts and whether these particular facts led the trigger to being moved in a way where the trigger tab would have prevented it. Couldn't you ask questions as to the conditional of the effect that the tagged trigger would have had so that linking up your client's testimony and the expert's testimony as to whether this could have happened if there had not been other, you know, a finger on the trigger or some other direct pullback of the trigger? And the effect of having a tagged trigger, if the jury can put those two together, what difference does that make to you whether you call it causation or design defect? I agree with you, Your Honor, that the experts can talk about the design defect. The jury could come to a conclusion without expert testimony on causation. So I don't know that we necessarily, quote-unquote, lose much other than the expert's ultimate opinion that this incident was caused by the lack of a tagged trigger. If you're asking whether we could ask hypothetical questions as to, you know, in what areas of the trigger could a tab block or lock the trigger from moving backwards, those are design opinions. Those are design defect opinions. So I believe Your Honor is right that we could ultimately go through the design aspects. And the district court ruled that there is sufficient evidence for a design defect, and these experts can testify to that. Coupling with the causation going to the jury, I think that would be sufficient for a case to be made. Just a side point. I take it from your and your friend on the other side's briefing, both of you understand this to be an issue of substantive Pennsylvania tort law, correct? And even though the discharge is connected to Delaware, everything else happens in Pennsylvania, so no one's disputing that we apply Pennsylvania law here, correct?  Thinking about the cases that we look to to determine whether or not you need an expert in this context, I want to think a minute about the case that we have where there were chicken carcasses that were brought through the blade, and the court determined, all right, if you have, you don't need an expert to discuss whether or not this would have been safer if you had a cover on the blade versus the case about a truck floor. And no jury does need an expert to determine whether or not there was an issue with the truck floor. And trying to figure out where this fits. As I understand it, we have testimony that tells us things like, okay, if you're talking about a P-320, it requires a certain amount of weight, a certain number of pounds to pull it. But if you're talking about a tab trigger, that's something different. Help us understand why this case is closer to the cover on a blade than the truck floor. Thank you, Your Honor. Padillas, I believe, is the chicken guarding case, and Odie is the crashworthiness defamation case. And that really is the issue here on whether the jury could come to causation opinions without expert assistance. In Padillas, the issue was very simple, whether a guard could prevent contact. That is exactly the case here. In Sanoga, that's the case with a Hyundai where the floor mat may have come in contact with the accelerator or blocked it from moving. Again, easy concepts to understand, floor mats, guards. In Cornell, even the issue of whether a fire was caused by a new truck, the court found, the PA Superior Court found, that that was a case that did not require expert opinion. Compare that to the cases that did require expert opinion. In Ray Paoli, which was cited in the defendant's brief, this was exposure to polychlorinated biphenyls causing injury. And I apologize for mispronouncing it, but it does go to the complexity of the case. Kemmerer, whether mold spores were caused by a leak or stagnant air or a neighboring greenhouse. Odie, as Your Honor mentioned, this is a crashworthiness case that talks about defamation. It talks about tensile properties of steel, intrusion levels. These are complex issues. Pollens, whether the inner workings of a cutoff machine caused an injury. There is no need for the jury to get into the internal mechanisms of this gun. There are internal safeties of a P320. They have nothing to do with whether it prevents the trigger from moving backwards like external safeties do. This is purely an external safety issue, not like pollens where you have to get into the meat of this machine. Saldo involved whether a drug for postmortem lactation caused a stroke. The State Farm cases, there were three of them cited, Cohen, Gopher, Waterbury. Those were all cases involving fires and floods of products and electrical components and mechanical components. And the theme in these cases is that these are complex issues. Jurors do not understand the electrical capabilities of dishwashers or refrigerators. The same way they know that a lock on a door stops the door from moving. A lock on a trigger stops the trigger from moving. This is squarely within those simple cases like Cornell, Padilla, Sunoga, Bialik, a beer bottle explosion. It fits squarely within that frame. Just going briefly for a moment to the first issue of whether the experts should have been permitted to testify. We do submit that they should have been. And the thoroughness of an expert's investigation goes to the weight of the evidence, not necessarily the admissibility of the evidence. Can we just step back to what it is they should have been permitted to testify about? Because the experts are quite candid that they weren't asked to and aren't prepared to talk about what actuated the trigger in the first place. Right? Right. The experts do not know what foreign object contacted the trigger. So if that's what you mean, if that's what the district court meant in talking about causation, is there really any daylight between you? That's not something that the experts, these particular experts, can speak to. I agree. I don't think anyone can speak to what specific item caused the trigger to move backwards, the actual item. But the issue is the mechanics and what a tab trigger does to prevent it. So we believe that the testing that the experts did proves that in a holstered weapon specifically, the front face of a trigger where the tab is located would not have easy access. And it would be, in the words of the experts, highly improbable in that circumstance. Whether the court allows that to be a hypothetical question that could be asked of the experts or whether we pose it specifically as to the facts of this case, I think that would be, that could be handled either way. But I don't see a whole lot of daylight there. And really the issue is causation in a simple case is within the purview of the jury either way. I only have 10 seconds left. I'll save the remaining time for rebuttal unless there are additional questions. Yes, I would like to, just to follow up on my colleague's question about the law here. Because you are, you're citing to a number of federal cases. And just so we understand, were you doing that because they're talking about Pennsylvania law and elucidating what that standard is? Or were you trying to raise an issue as, an eerie issue as to whether we should be considering federal or state law? No, I think it's a state law issue. And I think those federal courts were interpreting the state laws. I will say that the three of the four cases that we cited, the main cases on whether causation can go to the jury on simple issues, those were state court cases, Pennsylvania Supreme Court and Superior Court cases. Of the cases that I mentioned, about 10 of them for the defendant, Appellee, those were predominantly Third Circuit and Eastern District of Pennsylvania opinions. So we believe that Pennsylvania state law applies. And we cited the Biala case, the Cornell case, and the Sonega case for those conclusions. Thank you. Thank you. Good morning, Your Honors. May it please the Court. Good morning. We've danced around an issue that I think is significant here. We've got a gun and a holster. I can't bring one in, but you guys gave us a Third Circuit pen, thank you very much, in a sleeve. Gun and a holster in this accident with causation. Plaintiff's experts did not look at the holster. Plaintiff's experts have no idea what holster was used in this accident. They say the gun was in the holster, and they say that because of that, a tab trigger would have prevented his discharge. Well, they say they're relying on the testimony of Mr. Slutowski, which is all they can do since they weren't there, right? But Mr. Slutowski doesn't describe the holster, and they didn't look at the holster. This is important because if the gun was all the way in the holster, if the gun is partly in the holster, I can tell you, Your Honors, that the holster that was used in this case is a holster that does not cover the entire pistol. Why is this something that needs expert testimony? Why can't this just be taken, use the lay knowledge and common sense of the jury to look at the holster and how much it covers? Just as you're not an expert and you're describing it to us, why can't the jury do the same thing? Because the tab trigger does not lock the trigger. The tab trigger is not like a lock on the door, Your Honor. A manual thumb safety is like a lock on a door if it's properly engaged. That completely prevents the trigger from being moved. A tab trigger is not designed to prevent the trigger from being moved. It was never designed to prevent the trigger from being moved. A tab trigger is designed to be deactivated when the trigger is pressed. But once again, why do you need an expert? As you're explaining that to us, I understand everything you're saying. Why can't the jury understand that? Because the jury needs to understand how a foreign object will interact with a trigger when it is in a holster. For that, they need measurements of the holster. They need to know what the gap is in the holster. They need to know what the available foreign objects were. But the holster could be introduced into evidence. The jury can inspect all of this. Why do they need an expert for that? I mean, I think a lot of the cases you're citing are not products, liability, design defect cases. And that's the context that we're in. And, Your Honor, I respectfully disagree because there are product liability design defect cases that are cited, including the Adi case. And in our supplemental brief, we also cited two product liability design defect cases. Okay. And I do want to note, by the way, one area of agreement seems to be you likewise, even though you're citing some federal cases, you're citing them for what Pennsylvania law is, which is why there are federal cases in diversity applying Pennsylvania substantive law, correct? Correct, Your Honor. So the problem is a jury is not going to be able to see this because, one, we're in federal court, and the jury is not going to get a gun handed to them to put into the holster to put that together and a foreign object to go in and see if they could actuate a tab trigger. A jury can't look at that. You need an expert to do that outside of the courtroom. A jury can't look at a holster by itself and say, if this gun were in the holster, a tab trigger would prevent it. And we know, and the plaintiff's experts agree, tab triggers do not prevent accidental discharges. And we know guns with tab triggers have accidental discharges in holsters. So why isn't this all cross-examination of the experts who are talking about the design of the firearm and the limits to their expert testimony? So let's break this down into two, right? So first of all, there's already an opinion that they can't talk in the lower court, that they can't talk about causation. And I think, so if I could just address that briefly, I think that we can agree that when an expert does not look at the accident and does not look at the specifics of the case, the expert cannot then render an opinion as to the causation of a specific accident. What does causation mean in this context? Because you seem to be talking about it in broad terms, but on the other side of the aisle, your colleague is talking about it in very narrow terms. And is it clear to you from the district court's opinion what it means that they cannot talk about causation but can talk about design? Yes, Your Honor. There's two things here. And this case actually is more similar to a crash warrant than this case because we are not saying this gun discharged because of a design defect. It didn't explode. It didn't spontaneously discharge. It discharged when the trigger was pulled, and it discharged because the gun is designed to discharge when the trigger is pulled. So the question here is more similar to a question like an oddy. Would this alternative design have prevented this accident? Would it have prevented this discharge? That's the causation issue, and that's the issue that requires expert testimony. But there's a dispute here about whether the trigger was pulled, and that is something that would go to cross-examination of the plaintiff because the plaintiff's testimony is that he didn't pull the trigger, right? So if there's that evidence in the case, then even in the context of testifying about design, couldn't an expert address the hypothetical, because there's a foundation for it in the record, about whether it's possible for the firearm, for this particular firearm, to fire even if the trigger is not fully pulled back? Your Honor, there's no dispute the guy had the trigger fully pulled back. So let's be very, very clear. There is zero dispute in this case that the gun had the trigger pulled all the way to the rear. Plaintiff's experts agree to that. The dispute is whether plaintiff's finger did it or whether a foreign object did it. Let's say clothing, something loose hanging off of, you know, something that got into the holster. There is no dispute the gun discharged when the trigger was pulled to the rear. Where is the agreement as to that in the record? Because the plaintiff's testimony is that he just touched the handle and it went off. And the experts talk about a number of different ways that this firearm, including pressure on the sides, could activate. Right. And what they're saying, Your Honor, is that it's pulling all the way to the rear. I mean— All the way to the rear. I think it was 1 20th of an inch. It's not all the way to the rear. That is all the way to the rear, Your Honor. What this is is how far back to the rear the gun has to get pulled. So the plaintiff's experts— The question is, like, what actuates? And what you're saying is, you're talking about a tab trigger. You have to have your finger in the gun. You have to have something in the gun to pull it far enough back for it to actuate. If you're talking about the P320, it might be that you have the holster on the side that causes it to actuate, causes it to go the 1 20th. Your point is, when you say pulled all the way back, you mean whatever it takes to actuate that gun. Correct, Your Honor. And the holster, that can't be a possibility here, at least as far as—that needs expert testimony. So I want to go back to the question that Judge Krause asked you, because I'm not sure I understand the answer. She said, we're trying to figure out what we mean by causation. And there's no question that these experts can't tell us what actuated the trigger here. We all agree on that. What's the next step? What is it beyond that? Because there is daylight between you and your friends on the other side about what the expert can or cannot testify to after the actuation question. So assuming we all agree on that, what is the next thing that—what can't the experts testify to? The experts cannot testify that a tab trigger would have prevented this accident. Because they didn't test a tab trigger in a holster? Because they didn't look at the holster. They didn't test the tab trigger in the holster. They don't know what object—they didn't look at the available objects that were around to pull the trigger. So you can test—you could test a—in the more recent cases, Your Honors, the plaintiff's experts—for instance, there was a case where there was an allegation that maybe a key got into the trigger. The plaintiff's experts took a key into a holstered pistol, and they actuated it with and without a tab trigger, let's say. That's a test that can be done. Actuate is a fancy word for got it to fire. For pull. And the reason why we sometimes use actuate is because when we say pull, people think a person pulling it. But a gun doesn't know if a person is pulling the trigger or if a foreign object is pulling the trigger. Now, if you get, let's say, a pen or something into a holstered trigger, that can go sort of at an angle, and the holster can act as a lever when that object pulls it. That can decrease the forces in which it takes to pull the trigger. Also, where the trigger needs—the tab on a trigger needs to be pressed to disengage it, that's not something that is in the ordinary knowledge of a juror as well. The amount of force it takes to disengage the tab trigger, that is not something in the ordinary knowledge of a juror. But that's something that the experts can tell us about with design, right? Like how much force it takes to pull a tab trigger. But they didn't, Your Honor. That's the problem. This is work they didn't do. But that's not the reason the court gave. The reason the district court gave was they weren't there, and they didn't look at this weapon immediately after firing, right? But that seems to be problematic if you're agreeing that, yes, an expert can testify to such things. So, no. The problem with the causation and what the judge or what the district court said, what Judge Shurek said was on the issue of causation, that the testimony was reliable. So their testimony, their conclusion that a tab trigger would likely have prevented this accident was unreliable because there were no data, no studies, and no testing that they looked at, okay? And while in the briefing the plaintiffs talk about data from, let's say, from ICE that they looked at, the plaintiffs' experts have agreed that without the denominator of that, that doesn't say anything. So, okay, let's say they look at ICE data, and there's two discharges with a Glock and ten discharges with a P320. All right. So common ground here. The district court, we review deferentially whether it was abused its discretion in keeping out the this caused this accident. But nothing in the district court suggests that these experts can't testify about the design defect, correct? It's all about causation. But there's a distinct question. Even if you say you can keep out the ultimate answer, yes, this caused it or not, we review the summary judgment, and we review the summary judgment de novo, no difference to the trial court, right? So you have to explain why the district court is properly granting summary judgment here and not allowing the jury to piece together what the expert does say about the design with what it can figure out with its ordinary common sense. And the issue is the jury cannot figure it out with their ordinary common sense because they need information that only an expert can provide. That information includes what forces are required to disengage the tab trigger, which the plaintiff's experts have not rendered an opinion on. That information includes the spatial relationship between the fully holstered pistol, what the space was for an object to get in because that matters as to whether something could disengage the tab on the trigger when it is holstered. That is not information that is in the ordinary knowledge of a layperson. And the jury is not going to... Not something that someone can eyeball with diagrams and exhibits and things. Well, no, they can't eyeball it with diagrams and exhibits and things. And it's also work that, I mean, first of all, how is that even going to come in? Because the experts can't talk about it. The experts didn't do the work. So now you're talking about brand-new work by the experts now to try to do it, right? But also it can't just be eyeballed. You have to do some calculations on force. The experts could come in and demonstrate this. But in federal court, with a gun case, you're not going to be able to bring a gun in, put it in a holster, and show the jury that a tab could be disengaged. Why couldn't you have a weapon that had been neutralized, disassembled, blocked, no ammunition, a replica, something like that? And you have Slutowski's own testimony here that this is what he did. But Slutowski doesn't testify as to what the foreign object is. And so what the jury needs to understand is the pressure that a foreign object could put on this trigger and how that's going to interact in a holstered gun and how that's going to disengage a tab trigger. The jury does not have the information to be able to determine whether a tab trigger would be disengaged within a holster. And there's no question that a tab trigger can be disengaged within a holster because there are cases in which pistols that have tab triggers have discharged in a holster. So to be able to determine whether a tab trigger would have made a difference, you absolutely have to have expert testimony analyzing this incident and these facts and the holster itself and the relationship of the holster to the gun. Okay, let me ask you a bigger picture question. You're – the thrust of your argument is that you can never have products liability without an expert who was at the scene or immediately thereafter, it seems. Oh, absolutely not. How – in a car crash case where the question is whether the airbags – a defect in the airbags caused them not to deploy enough or properly to prevent some injury, you're never going to have an expert there. This is a reason why tort law developed the doctrine of res ipsa loquitur. Sometimes you can just infer it from the accident, and the upshot of your position is going to make it quite possible for lots of defective products to escape any liability. No, Your Honor. All these experts had to do is take an exemplar holster, take an exemplar gun, put them together, put a foreign object in, figure out what Mr. Slutowski had on his body around his person, use those objects, and see if the gun would disengage with a tab trigger or if it would disengage without a tab trigger. Why can't Slutowski testify, here's the actual holster, here's where it was, here are the things that are around me, and then do this through lay testimony? Well, I don't know how Mr. Slutowski is going to do that through lay testimony because he doesn't have the experience to say how to get something in and pull that trigger. We're talking about expert testimony. He can talk about what's around him, and here's the holster, and here's the gun, but not what the force is going to be to disengage the tab trigger and what those measurements are and what the foreign objects are, how that's going to apply seven pounds of force to the trigger to pull it to the rear, and whether that's going to engage or not a tab trigger. But Turton does testify and put in his report particular measurements about how much pressure is needed, and both of them talk about the difference between a sort of incidental grazing of the trigger, something from the side, versus what would be required to actuate it if there had been a tab trigger. So why isn't that testimony helpful information to a jury as they're considering the other pieces in the case, including plaintiff's testimony, the holster that they would have in front of them, to make the decision that is ultimately a factual one for them about causation? The problem is, Your Honor, that you need an expert to talk about the type of trigger, the size of the trigger. They need to explain what a tab trigger is, what size. The plaintiff's experts don't even talk about what size of the tab trigger is required. They don't talk about any real-world data about whether tab triggers actually prevent accidental discharges in holsters, and there's no evidence that they do. Without that, the jury is going to be left to guess as to whether whatever caused the trigger to be pulled in this incident would have been prevented by a tab trigger, and there is work that could have been done by the experts to show that and give the jury that information, but the experts did not do that work. We are not saying that somebody has to be there to witness the accident, and nobody said that about crash-worthiness cases, but you do have to go and take measurements and determine the forces that are available. So what for an object, how is that going to put the force? For instance, there are cases where pistols with tab triggers are discharged in a holster because clothing got wrapped around the trigger and pulled on the front of the trigger. So the force that was applied, what was possible, what was around to apply that force, how it could have been applied does determine whether a tab trigger would have prevented the accident or not. And without an expert to talk about what was done and the relationship between the gun and the holster and the forces that are necessary and could be applied, the jury is going to be left to simply guess on that. So let me just ask you a question. So we understand that Mr. Turton tells us how much force you need to pull to actuate a P320. Yes. And he says that you need more force to actuate a tab trigger and that the force that you need to actuate a tab trigger would prevent a lateral movement actuating the trigger. Just so I understand, if we were to drill this down to one piece of testimony that's missing, in your view, that you have to get from an expert, is that that the expert has to tell us precisely how much force you need to actuate a tab trigger? No, Your Honor. That's one component of it, of a bunch of information that is missing. At a minimum, these experts needed to take a look at the holster itself. They don't even know what kind of holster was used. They need to look at whether a foreign object would also have disengaged a tab trigger. Would a tab trigger have prevented this accident? They did absolutely no work to show that a tab trigger would prevent a discharge in a pistol holstered in the holster that Mr. Slutowski was using. That is the problem. They did no work to do that, and a jury is not going to be able to figure that out on their own, and a layperson cannot testify to that. Will you remind me, I know there are cases, you know, some of these cases dealt with keys and clothing and all of that. Is there any allegation about any foreign object in this case other than it being in a holster? Well, thank you for asking that. No, nobody even looked at it. Now, the allegation and the evidence does actually point to the holster being out, the gun being out of the holster, and the plaintiffs, if they had looked at the holster, could have looked at that as well. But on a summary judgment issue, assuming that the plaintiff's testimony is true, that it is fully in the holster, the issue here is that a holster, you would have to have an expert to say that the holster could even contact the sides of the trigger and pull it. You'd have to look at the material of the holster. You'd have to look at whether it's even possible to get that in and pull that, and then also pull that trigger rearward. That absolutely requires expert testimony. You have to look at the materials of the property, the forces, whether it's possible. You'd have to do some testing on that. So that can't be done. Then what other foreign objects were available, the experts didn't bother to look at that. So there's just simply no information the jury would have to guess as to what possibly could have pulled the trigger. And without somebody looking at those objects and saying whether that could even pull the P320's trigger with or without a tab trigger, they're guessing. You need the expert testimony on that. I am way over my time, Your Honors. Okay. Thank you. Thank you. Thank you, Your Honors. My friend and I have tried a couple of these cases. In both of those cases, in federal and state court, the judges permitted guns in the courtroom, permitted holsters in the courtroom. In the federal case in Georgia, as counsel knows, the jury was permitted to take the gun and the holster and put the gun in the holster and do exactly what Your Honor is referencing. There is testimony about what type of holster it was. Officer Slotowski testified to that, and both experts identified that in their depositions. But with my remaining time, Your Honors, I just wanted to go back to the Davis case, the Sixth Circuit. And there are some quotes that are nearly identical here. The issue maybe a month or two ago of whether or not Pennsylvania and Kentucky law are the same on this issue, they are identical. There is no argument as to whether one state requires expert testimony. The issue is whether the case is complex enough or not for the jury. Davis quoted, the Davis opinion, and I quote, in this case, the question of causation is straightforward. Did Davis, in that case, actuate his P320 from a side pull or graze that an external safety would have prevented? Expert evidence is unnecessary where a juror, through common knowledge or experience, can understand the intricacies involved in the claim. The only complex issue in the Davis case involving the same gun is whether there is any defect in the design and whether reasonable alternative designs exist. The case is not extraordinarily complex, and the inner workings of the P320 are complex, and they would require expert testimony. Going back to the district court, the district court, in its opinion, cited five other P320 cases. In two of those cases, Lang and Catato, summary judgment was denied and the experts were permitted to testify on causation. In Davis, as your honors know, the experts were not able to give the ultimate issue on causation, but that could go to the jury. A fourth case, the Mays case, I apologize, is not a case we handled, not a case involving Mr. Tertin or Dr. Vigilante. That is another lawyer who was talking about internal design defects of the gun has no applicability to the facts of this case. So of the four cases that are similar, three of them have held exactly what the Davis court held and what we would ask your honors to hold, which is to allow Mr. Slutowski the opportunity to present his case to a jury. One additional note, since the Judge Surik's opinion, there has been a Pennsylvania State Court case. That case has gone to trial. That case returned a verdict, and that case permitted on Pennsylvania substantive law the issue of causation to go before the jury. Thank you all for your time. Thank you. Thank counsel for their arguments, and we will take this case.